J. B. CROCKETT v. R. B. BRAY, Sheriff, and M. MAKELEY.

(Filed 8 January, 1910.)

1. Judgments—Lands—Levy—Quieting Title—Injunction.

The plaintiff showing title to lands by deed .expressing a valuable consideration, made and recorded prior to an attachment levied thereon by a judgment debtor of his grantor, may maintain his action to quiet title under the provisions of ch. 763, Public Laws of 1903, amending ch. 6, sec. 1, Public Laws 1893, now Revisal (Pell's), sec. 1589; and when defendant has answered alleging fraud of plaintiff in the procurement of his deed, an injunction will lie restraining the sale under the levy until the issue of title can be determined.

2. Deeds and Conveyances—Corporations—Officers—Present Consideration—Fraud—Questions for Jury.

A deed made by a lumber corporation to its principal officers of a large tract of land, expressing a present consideration, which, being subject to the lien of a prior mortgage, appears to be adequate, will not be declared fraudulent and void as a matter of law; and though the burden be upon plaintiff, alleging that he is a purchaser for value and without notice of fraud, if any existed, to show that he bought for a valuable consideration and without notice, the question is one for the determination of the jury under the issue raised by defendant's allegation that it was conveyed to defraud him and the other creditors of the grantor. *Edwards v. Supply Co.,* 150 N. C., 171, in which the consideration for the deed in controversy was a pre-existing debt, cited, approved and distinguished.

**3. Injunctions Dissolved—Appeal and Error—Injunction Continued —Bond—Procedure.**

> The Supreme Court in this case having overruled the judgment of the lower court in dissolving the plaintiff's injunction, requires the plaintiff to give a bond in a certain named sum, payable to defendant, with sureties approved by the Superior Court Clerk, with order that defendants be notified of its tender that they may object to its sufficiency; the bond to be filed within fifteen days from the filing with said clerk of a certified copy of this opinion, and conditioned to pay cost of the action and the principle and interest of the debt, if defendant's right of attachment and execution on the lands in question be finally upheld.

APPEAL from *Ward, J.,* from PERQUIMANS, on refusal of plaintiff's motion for injunction, in an action brought to the Fall Term, of the Court, 1909.

In October, 1906, M. L. Eure conveyed to Crockett Lumber and Pile Company, a Virginia corporation, the "Eure Farm," in Perquimans County, and certain personalty thereon situate, for the recited consideration of $13,000. On the same day, the lumber company executed to W. T. Shannonhouse, as trustee, a deed of trust, conveying all the property conveyed to it, to secure to said Eure the payment of notes aggregating $10,000, the balance of the purchase price. On 24 January, 1908, said company, for the recited consideration of $9,000, conveyed and sold said real estate, and sold certain personal property to J. B. Crockett and H. A. Crockett, by deed, duly recorded 24 May, 1908, and the said property was thereafter listed by the purchasers for taxation. On 8 September, 1908, H. A. Crockett sold and conveyed his interest in said property to J. B. Crockett. On 18 May, 1908, M. Makeley, Jr., brought suit in the Superior Court of Hyde County against the Crockett Lumber and Pile Company, which was returned not served. *Alias* summons was issued 15 August, 1908, which was also returned not served. On 19 August the plaintiff, M. Makeley, Jr., sought and obtained an attachment upon the property of the lumber company, and the same was levied by the defendant Bray, sheriff, upon the personal property and the land conveyed by the lumber company to the plaintiff, J. B. Crockett. In the action brought by Makeley the lumber company filed no answer and entered no appearance, and it was adjudged therein that the lumber company was indebted to plaintiff Makeley in the sum of $1,350 and interest and costs, and the attached property was condemned to its payment, and order of sale directed to issue. The plaintiff Crockett then brought this action, having by claim and delivery taken the personal property levied upon in the attachment, and sought to

enjoin the sheriff and Makeley from selling the land pursuant to the advertisement of sale. The defendant denied the plaintiff was a purchaser for value, and averred that the lumber company sold the property with the intent to defraud and delay its creditors; that the Crocketts were the principal officers of the corporation, the lumber company; and the deed was also, for this reason, fraudulent. The plaintiff denied all allegations of fraud, claimed he was a *bona fide* purchaser for value before Makeley brought this suit; that the corporation was solvent, and prayed the court to enjoin the sale of the real estate until the title of the plaintiff could be tried. His Honor declined to continue the restraining order and to enjoin the sale by the sheriff under the process issued from the Superior Court of Hyde County, and the plaintiff appealed to this Court.

W. T. *Shannonhouse,* Charles *Whedbee* and P. W. *McMullan* for plaintiff.
W. M. *Bond* and *Aydlett & Ehringhaus* for defendant.

MANNING, J. The evident trend of enlightened legislation is to remove, before sale, all defects of title to property sold under judicial process. Its object is to have property sold under process of the courts, bring the highest price, and, as far as possible, to eliminate speculation in defective titles to property sold by its process. The courts have been liberal in construing this remedial legislation. In *Campbell v. Cronly,* 150 N. C., 457, *Mr. Justice Connor,* in an able and elaborate opinion, reviews the policy and effect of this legislation and the decisions of many courts, and says: "The wisdom of enlarging the power of the court to deal with the subject is manifest. It is highly important to private right and public interest that titles shall be rendered secure and certain. . . . The unanimity with which judges have recognized the wisdom of the legislation, giving it a liberal construction, has made it effective." The first legislative act of this State looking to this end was the act of 1893 (chapter 6). Under this act, the Court held, in *Daniels v. Fowler,* 120 N. C., 14: "As to the fifth ground of demurrer, there is an allegation that the defendants claim that S. H. Fowler made a deed of trust, that what purports to be such is on record, and that defendants are holding under it. This is sufficient, under Laws 1893, ch. 6, to proceed to have the cloud removed, though the plaintiffs are not in possession." And in *McLean v. Shaw,* 125 N. C., 491, this Court said: "Under a line of decisions of this Court, culminating with

*McNamee v. Alexander,* 109 N. C., 242, it was held that a plaintiff could not maintain an action to remove a cloud upon his title unless it appeared affirmatively that he was rightfully in possession of the land. The act of 1893 (chapter 6) extended such relief to those who were not in possession. *Daniels v. Fowler,* 120 N. C., 14. We think, however, that it is not in contemplation of the act that a judgment lien should be included in the terms 'estate' and 'interest,' as they are used in the act." This case was decided at September Term, 1899. The Legislature, at its session in 1903, by chapter 763, amended the Public Laws 1893, ch. 6, sec. 1, by adding thereto the following words: "And in any case in which judgment has been or shall be docketed, whether such judgment shall be in favor of or against the person bringing such action, or shall be claimed by him, or shall affect real estate claimed by him, or whether such judgment shall be in favor of or against the person against whom such action may be brought, or shall be claimed by him, or shall affect real estate claimed by him, the lien of said judgment shall be such claim of an estate or interest in real estate as is contemplated by this act." The act was further extended by chapter 888, Laws 1907, but this amendment does not affect nor is it pertinent to the present action. It, however, illustrates the policy of enlarging this remedial legislation. These several acts will be found in section 1589, Pell's Revisal. We do not think that there can be any doubt that the uncontroverted facts of the present action bring it clearly within the provisions of chapter 763, Laws 1903. Makeley has had his debt ascertained and determined by a judgment of the court. By attachment levied on the land, he has brought the land within the jurisdiction of the court and has had it condemned as the property of the lumber company, to the satisfaction of his debt. The plaintiff claims the entire and absolute estate in the land, and the deeds under which he claims are offered in evidence, and antedate not only the action of Makeley, but the levy of the attachment. The real estate claimed by him is affected by the judgment and is specifically condemned to its payment, and is thus brought within the provisions of the act. He is therefore entitled to maintain this action.

The second question argued before us and presented by the record is that the deeds under which plaintiff claims are so clearly fraudulent, as against Makeley, that they are void, and ought not to be regarded by this Court as establishing even a *prima facie* case for the interposition of the court by injunction. The deed from the lumber company recites a present consideration of $9,000. At that date there was unpaid on the mortgage

or deed of trust a very large sum, amounting to several thousand dollars, and plaintiff's purchase was subject to this debt. The plaintiff alleges the price he paid was the full and fair price. There is no denial of these facts. The plaintiff further alleges he was a purchaser without notice of any fraud, if any existed. This is denied by defendants. While, under the principle announced in *Cox v. Wall,* 132 N. C., 736, the burden is on the plaintiff, as the purchaser of property alleged to be conveyed to defraud creditors, to show that he bought for a valuable consideration and without notice, yet an issue directly raising this question is presented by the facts of this case, and it is for a jury to determine the truth of it. It is further alleged that the lumber company was solvent and owned in this State other property than the property attached sufficient to pay the judgment of Makeley. We do not think the principle announced in *Edwards v. Supply Co.,* 150 N. C., 171, and cases cited, or *McIver v. Hardware Co.,* 144 N. C., 478, so conclusive of this case, as presented upon the affidavits, as to withdraw the determination of the alleged or presumed fraudulent intent and purpose from a jury. The grounds upon which the mortgage considered in the *Edwards case, supra,* was held invalid, are thus stated: "(1) The officers of the company had no right to take advantage of this knowledge of its financial condition to secure a preference for themselves on all of its property as to a *pre-existing debt.* (2) The mortgage was executed without any authority from the stockholders. (3) In addition, so far as this mortgage for a *pre-existing debt* was upon a stock of goods continually being depleted and renewed, possession being retained by the mortgagor, the mortgage being on all its property and in favor of its officers, the referee was justified in holding that it was void as to the other creditors." In the present case, so far as it now appears, the consideration was a present consideration, not a preexisting debt, and a full, fair price for the property. In the *Edwards case, supra,* this Court said: "It would have been otherwise if, at the time the money was authorized to be borrowed, the company had authorized the mortgage to be executed to secure its officers, who agreed to sign the note as endorsers." The decisions of this Court place upon plaintiff certain well-settled burdens of proof; but whether he can successfully carry them, either to the satisfaction of the trial judge or to the jury to whom he may submit the issues, it would be improper for us to forestall by the expression of any opinion. It seems to us, the facts, as they appear, sufficiently present a case for the interposition of the court, by its restraining order, to preserve the

*status quo* until the issues made by the pleadings have been passed upon by a jury or the trial court. The plaintiff will be required to file a justified bond, in the sum of $2,000, payable to the defendants, with sureties approved by the Clerk of the Superior Court of Perquimans County, and the defendants will be notified of the tender of the said bond, that they may object to its sufficiency. The bond shall be filed within fifteen days from the filing of a certified copy of this opinion with the Clerk of the Court of Perquimans County, and be conditioned to pay the costs of this action and the debt, principal, interest and costs of the defendant Makeley, if it shall be finally determined that the property attached was subject to the payment of said Makeley's debt; and, upon the acceptance of the bond, as directed, the defendants will be enjoined from proceeding to execute the power of sale until the final judgment. Upon plaintiff's failure to give the bond herein directed, the order of his Honor will remain undisturbed. The costs of the appeal will be divided equally between the plaintiff and defendants.

Error.