IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-829

 Filed: 5 September 2017

Wake County, No. 14 SP 3046

IN THE MATTER OF THE FORECLOSURE UNDER THAT POWERS GRANTED
IN CHAPTER 47F OF THE NORTH CAROLINA GENERAL STATUTES AND IN
THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR
ADDISON RESERVE AT THE PARK AT PERRY CREEK SUBDIVISION
RECORDED AT BOOK 9318, PAGE 369, ET SEQ., WAKE COUNTY REGISTRY
CONCERNING GINA A. ACKAH

 Jones Family Holdings, LLC (“Jones Family”), the high bidder at a foreclosure

sale, appeals from an order entered 30 December 2015 by Judge Kendra Hill in Wake

County Superior Court setting aside the sale and restoring title to the debtor. Jones

Family also appeals from the order entered the same day by the Assistant Clerk of

Wake County Superior Court returning possession of the real property to the debtor.

Heard in the Court of Appeals 9 March 2017.

 Law Office of Edward Dilone, PLLC, by Edward D. Dilone, for Appellant Jones
 Family Holdings, LLC.

 Adams, Howell, Sizemore & Lenfestey, P.A., by Ryan J. Adams, for Respondent-
 Appellee Gina A. Ackah.

 Bagwell Holt Smith P.A., by Michael R. Ganley, for Substitute Trustee Addison
 Reserve Homeowners Association, Inc.

 DILLON, Judge.

 I. I. Summary
 IN RE: ACKAH

 Opinion of the Court

 This matter involves a dispute about a residential property (the “Property”)

located within a planned community in Wake County. The planned community is

governed by an association (the “HOA”). The parties involved include Gina A. Ackah,

who purchased the Property in 2005; the HOA, which attached a lien to the Property

based on Ms. Ackah’s failure to pay dues; and the Jones Family, who purchased the

Property in 2015 at a public sale which had been ordered by the Clerk of Superior

Court to enforce the HOA’s lien.

 There is no evidence that Ms. Ackah received actual notice of the proceeding

before the Clerk which resulted in the order allowing the sale of her Property. Based

on its conclusion that the notice to Ms. Ackah was inadequate, the superior court

granted Ms. Ackah’s motion for relief from the Clerk’s order and ordered that the sale

of the Property to the Jones Family be set aside, restoring title to Ms. Ackah. The

same day, the assistant clerk entered an order returning possession of the Property

to Ms. Ackah.

 We hold that the HOA’s notice to Ms. Ackah of the proceeding before the Clerk

did not satisfy the requirements of Rule 4 of our Rules of Civil Procedure. Therefore,

we conclude that Ms. Ackah was entitled to some form of relief from the Clerk’s order

which had authorized the public sale of her Property.

 However, the superior court was constrained by N.C. Gen. Stat. § 1-108 from

granting a form of relief to Ms. Ackah which affected the title of the Jones Family’s –

 -2-
 IN RE: ACKAH

 Opinion of the Court

a good faith purchaser at the judicial sale ordered by the Clerk - to the Property. That

is, by enacting G.S. 1-108, the General Assembly has chosen to favor the interests of

the Jones Family over that of Ms. Ackah in the Property, where Ms. Ackah is

otherwise entitled to relief from the order pursuant to Rule 60 of our Rules of Civil

Procedure. G.S. 1-108 is not unconstitutional as applied to Ms. Ackah in this case

since the HOA’s notice to Ms. Ackah of the proceeding before the Clerk was

constitutionally sufficient, notwithstanding that she did not receive actual notice or

notice which complied with Rule 4. Therefore, the type of relief available to Ms.

Ackah from the Clerk’s order was limited to restitution from the HOA. See N.C. Gen.

Stat. § 1-108 (2015). Accordingly, we affirm in part and reverse and remand in part.

 II. Background

 Addison Reserve at the Park at Perry Creek is a residential planned

community subject to the Planned Community Act codified in Chapter 47F of our

General Statutes. The Perry Creek planned community is governed by the HOA,

which is empowered to assess dues and attach a lien to any Perry Creek home if the

owner becomes delinquent in paying HOA dues. See N.C. Gen. Stat. § 47F-3-116

(2015).

 In 2005, Ms. Ackah purchased the Property, financing almost all of the

purchase price with a loan secured by the Property. In 2012, Ms. Ackah moved to

 -3-
 IN RE: ACKAH

 Opinion of the Court

Africa, leasing her home during her absence. She did not inform the HOA of her

move. She had her mail forwarded to her uncle’s home in South Carolina.

 In 2014, Ms. Ackah fell behind on her HOA dues. The HOA mailed several

notices to the Property addressed to Ms. Ackah regarding the delinquency, all of

which were forwarded to Ms. Ackah’s uncle in South Carolina.

 The HOA commenced foreclosure proceedings to enforce its statutory lien

against the Property to recover the delinquent dues. The HOA sent certified letters

addressed to Ms. Ackah to her mother’s and uncle’s addresses, notifying Ms. Ackah

of the hearing set before the Clerk. These letters, however, were returned

“unclaimed.” The HOA then posted a notice of the hearing on the front door of the

Property. Although the HOA had an email address for Ms. Ackah, the HOA did not

notify Ms. Ackah by email of the proceeding to enforce its lien.

 A hearing was held before the Clerk. Ms. Ackah was not represented at the

hearing and claims that she never received actual notice of the hearing.

 The Clerk ordered the Property sold to satisfy the HOA lien. The sale of the

Property was held, and the Jones Family was the high bidder, with a bid of $2,708.52.

In early 2015, the Property was deeded to the Jones Family, subject to any lien

superior to the HOA’s lien, which included the lien securing Ms. Ackah’s mortgage.

 Shortly after the sale, Ms. Ackah first learned of the proceeding and the public

sale from her tenant after her tenant received a notice to vacate the Property from

 -4-
 IN RE: ACKAH

 Opinion of the Court

the Jones Family. Upon learning of the sale from her tenant, Ms. Ackah filed a

motion in superior court pursuant to Rule 60 for relief from the Clerk’s order which

had authorized the public sale of her Property. The superior court granted Ms.

Ackah’s Rule 60 motion and ordered that the sale to the Jones Family be set aside,

thus restoring title to Ms. Ackah. The Jones Family has timely appealed.

 II. Analysis

 The superior court’s 30 December 2016 order, which is the subject of this

appeal, essentially did two things: it (1) stated that Ms. Ackah was entitled to relief

under Rule 60(b) from the Clerk’s order which had authorized the sale of her

Property, and (2) ordered relief to Ms. Ackah by setting aside the sale to the Jones

Family, thereby restoring title to Ms. Ackah. We address each issue in turn.

 A. The Superior Court Was Authorized To Grant Relief From the Clerk’s Order,
 Pursuant to Rule 60(b)

 We hold that the superior court did not err in concluding that Ms. Ackah was

entitled to relief from the Clerk’s order based on the HOA’s failure to use “due

diligence” to notify her of the proceeding as required by Rule 4 of our Rules of Civil

Procedure. In order to enforce its statutory lien, the HOA was required to give Ms.

Ackah notice of the hearing before the Clerk in a form which satisfied Rule 4. See

N.C. Gen. Stat. § 47F-3-116 (c), (f). Rule 4 requires the use of “due diligence” in

providing notice. N.C. Gen. Stat. § 1A-1, Rule 4 (2015).

 -5-
 IN RE: ACKAH

 Opinion of the Court

 We hold that in this case, the HOA did not use “due diligence” as required by

Rule 4. Specifically, the HOA had Ms. Ackah’s email address. The HOA attempted

service by certified mail. The HOA had reason to know that Ms. Ackah was not

residing at the Property as the HOA sent those letters to Ms. Ackah’s mother and

uncle. When the notice letters came back “unclaimed,” Rule 4 due diligence required

that the HOA at least attempt to notify Ms. Ackah directly through the email address

it had for her rather than simply resorting to posting a notice on the Property. See

Chen v. Zou, ___ N.C. App. ___, ___, 780 S.E.2d 571, 574 (2015) (due diligence requires

emailing to a known email address before resorting to service by publication). And

since the HOA failed to comply with Rule 4 in providing notice to Ms. Ackah, Ms.

Ackah was entitled to relief from the Clerk’s order pursuant to Rule 60.

 B. The Superior Court Erred By Granting Ms. Ackah Any Form of Relief Which
 Would Affect the Jones Family’s Title

 We hold that N.C. Gen. Stat. § 1-108 restricted the superior court in this case

from granting Ms. Ackah any relief which affected the Jones Family’s title in the

Property.

 The plain language of N.C. Gen. Stat. § 1-108 states that a court setting aside

an order pursuant to Rule 60 may order relief in the form of restitution, but that the

court cannot order any relief which affects the title to property which has been sold

to a good faith purchaser pursuant to the order being set aside:

 -6-
 IN RE: ACKAH

 Opinion of the Court

 If a judgment is set aside pursuant to Rule 60(b) or (c) of
 the Rules of Civil Procedure and the judgment or any part
 thereof has been collected or otherwise enforced, such
 restitution may be compelled as the court directs. Title to
 property sold under such judgment to a purchaser in good
 faith is not thereby affected. . . .

N.C. Gen. Stat. § 1-108.

 We note that N.C. Gen. Stat. § 1-108 may be unconstitutional as applied if the

property owner being divested of her property has not received notice which is at least

constitutionally sufficient. Our Supreme Court has held that a statute which allowed

for the tax sale of a property without any attempted notice to the taxpayer/owner

except by posting and publication was unconstitutional as applied, stating that the

process “offends the fundamental concept of due process of law.” Henderson County

v. Osteen, 292 N.C. 692, 708, 235 S.E.2d 166, 176 (1977) (setting aside a tax sale of

taxpayer’s property where taxpayer did not receive notice which was constitutionally

sufficient).

 Here, there is no evidence that Ms. Ackah received actual notice or other notice

sufficient under Rule 4. However, based on jurisprudence from the United States

Supreme Court, we must conclude that the attempts by the HOA to notify Ms. Ackah

were constitutionally sufficient. Specifically, a party need not use “due diligence”

under the Constitution, but rather, as the United States Supreme Court held, notice

is “constitutionally sufficient if it was reasonably calculated to reach the intended

recipient when sent[.]” Jones v. Flowers, 547 U.S. 220, 220 (2006). The Court

 -7-
 IN RE: ACKAH

 Opinion of the Court

explained that constitutional “[d]ue process does not require that the property owner

receive actual notice[.]” Id. at 226 (emphasis added). For instance, where notice sent

by certified mail is returned “unclaimed,” due process requires only that the sender

must take some reasonable follow-up measure to provide other notice where it is

practicable to do so. Id. The Court specifically held that where the owner no longer

resides at the property, due process is satisfied if the notice is posted on the front door

of the property, as it is reasonable that the owner’s tenant would notify the owner of

the posting:

 [A] reasonable followup measure[], directed at the
 possibility that [the owner] had moved as well as that he
 had simply not retrieved the certified letter, would have
 been to post notice on the front door, or to address
 otherwise undeliverable mail to “occupant.” . . . Either
 approach would increase the likelihood that the owner
 would be notified that [s]he is about to lose [her]
 property[.] . . . It is [] true in the case of an owner who has
 moved: Occupants who might disregard a certified mail
 slip not addressed to them are less likely to ignore posted
 notice[.] . . . [T]here is a significant chance the occupants
 will alert the owner, if only because a change in ownership
 could well affect their own occupancy.

Id. at 235.

 In the present case, the HOA posted a notice on the Property’s front door after

the HOA’s certified letters were unclaimed. Therefore, the HOA’s notice was

constitutionally sufficient under Jones, notwithstanding that the notice did not

satisfy the “due diligence” requirement of Rule 4. We note that the HOA did even

 -8-
 IN RE: ACKAH

 Opinion of the Court

more to notify Ms. Ackah than posting the notice on the Property: the HOA sent

several letters by regular mail to Ms. Ackah indicating its intent to enforce the lien.

Id. at 234 (holding that notice by regular mail is reasonable). It is certainly

reasonable to assume that Ms. Ackah would reach out to her uncle where she had

instructed her regular mail to be sent about any mail that had, in fact, been sent to

her.

 Accordingly, since the notice was constitutionally sufficient in this case, it is

our duty to follow the policy decision made by our General Assembly, as set forth in

N.C. Gen. Stat. § 1-108, which would favor the interests of the Jones Family, as a

good faith purchaser at a judicial sale, ahead of the interests of Ms. Ackah in the

Property. We note that the General Assembly’s policy decision favoring the Jones

Family is rational because it encourages higher bids at judicial sales, as explained by

our Supreme Court in Sutton v. Schonwald, 86 N.C. 198, 202-04 (1882), and other

opinions which are explained more fully below. We note that N.C. Gen. Stat. § 1-108

does not leave Ms. Ackah without a remedy. Indeed, in this case, N.C. Gen. Stat. §

1-108 allows Ms. Ackah to seek restitution from the HOA.

 The dissent relies on a 1990 opinion from our Court to suggest that the superior

court did have the authority to affect the Jones Family’s title when it set aside the

Clerk’s order. Specifically, in Cary v. Stallings, a panel of our Court held that N.C.

Gen. Stat. § 1-108 allows a court to affect the title of property already sold when

 -9-
 IN RE: ACKAH

 Opinion of the Court

granting Rule 60 relief “if the court deems it necessary in the interest of justice.” Cary

v. Stallings, 97 N.C. App. 484, 487, 389 S.E.2d 143, 145 (1990).1 However, our Court

did not cite to any Supreme Court precedent in Stallings, and its holding otherwise

conflicts with the plain language of N.C. Gen. Stat. § 1-108 and with precedent from

our Supreme Court which has interpreted the statutory language contained in N.C.

Gen. Stat. § 1-108. Therefore, we hold that we are not bound by Stallings but rather

by North Carolina Supreme Court precedent referenced below.

 Our Supreme Court has not had occasion to address the language in N.C. Gen.

Stat. § 1-108 since our Court decided Stallings in 1990. However, prior to 1990, our

Supreme Court stated on a number of occasions that where a court sets aside a

judgment, the court may not enter an order which affects the title to property sold

under that judgment to a good-faith purchaser, at least so long as the debtor received

constitutionally adequate notice of the proceeding. For instance, in 1920, our

Supreme Court considered a predecessor to N.C. Gen. Stat. § 1-108, a statute which

stated as follows:

 . . . and if the defense be successful, and the [prior]
 judgment . . . shall have been collected, or otherwise
 enforced, such restitution may thereupon be compelled as
 the Court may direct, but title to property sold under such
 judgment to a purchaser in good faith shall not be thereby
 affected.

 1 Stallings has been relied upon by panels of our Court in unpublished opinions. See County
of Jackson v. Moor, 236 N.C. App. 247, 765 S.E.2d 122 (2014) (unpublished); Zheng v. Charlotte Prop.,
226 N.C. App. 200, 739 S.E.2d 627 (2013) (unpublished).

 - 10 -
 IN RE: ACKAH

 Opinion of the Court

White v. White, 179 N.C. 592, 599, 103 S.E. 216, 220 (1920) (emphasis added). In

White, the defendant’s land was sold at a judgment execution sale to a good-faith

purchaser, allegedly without actual notice to the defendant. Our Supreme Court held

that the defendant was not entitled to the return of his property, noting that “the title

to the land was acquired by the plaintiff as a bona fide purchaser at the sale under

execution, and cannot be disturbed.” Id. (emphasis added). The Court held that the

notice to the defendant was not constitutionally defective, notwithstanding the fact

that he did not receive actual notice. Id. at 599-600, 103 S.E. at 220.

 In 1926, our Supreme Court considered the statutory predecessor to N.C. Gen.

Stat. § 1-108, specifically focusing on the line from the statute: “Title to property sold

under such judgment to a purchaser in good faith is not hereby affected.” Foster v.

Allison Corp., 191 N.C. 166, 170, 131 S.E. 648, 650 (1926). In that case, the

defendants sought to have a judgment set aside which had resulted in the sale of their

property to a third party: “Counsel for defendants earnestly contends that in setting

aside a judgment under [the precursor to N.C. Gen. Stat. § 1-108], a bona fide

purchaser may obtain title and property be taken without [the defendants having

their] day in court[.]” Id. at 170, 131 S.E. at 650-51. Our Supreme Court held that

the statute did not violate the defendants’ due process rights, as the court had

jurisdiction over the property. Id.

 - 11 -
 IN RE: ACKAH

 Opinion of the Court

 In 1897, our Supreme Court stated that, based on a statutory predecessor to

N.C. Gen. Stat. § 1-108, the title to real estate purchased at a judicial sale cannot be

affected where a court determines later that there was some irregularity in the

judgment. Harrison v. Hargrove, 120 N.C. 96, 106, 26 S.E. 936, 939-40 (1897). In its

decision, our Supreme Court quoted England v. Garner, 90 N.C. 197 (1884), as

follows:

 It is well settled principle and authority, that where it
 appears by the record that the Court had jurisdiction of the
 parties and the subject-matter of an action the judgment
 therein is valid, however irregular it may be, until it shall
 be reversed by competent authority; and although it be
 reversed, the purchaser of real estate or other property at
 a sale made under and in pursuance of such judgment,
 while it was in force and while it authorized the sale, will
 be protected. . . . [Where] the judgment is regular on its
 face, a purchaser of property under such a judgment or
 decree must be protected in his purchase, even though the
 judgment or decree be afterwards set aside on the ground
 that in point of fact service of summons had not been
 made[.]”

Hargrove, 120 N.C. at 105-06, 26 S.E. at 939 (emphasis in original).

 On a number of occasions, our Supreme Court has stated that the policy behind

the statutory language now found in N.C. Gen. Stat. § 1-108 is to encourage higher

bids at judicial sales and to protect the integrity of title to property:

 The title acquired at a judicial sale of lands made by a court
 of competent jurisdiction, is not rendered invalid by reason
 of the reversal of the decree for irregularity in the
 proceedings, of which the purchaser could have no notice.

 - 12 -
 IN RE: ACKAH

 Opinion of the Court

 ....

 A contrary doctrine would be fatal to judicial sales and
 values of title derived under them, as no one would buy at
 prices at all approximating the true value of property, if he
 supposed that his title might, at some distant day, be
 declared void, because of some irregularity in the
 proceeding altogether unsuspected by him[.]

 ....

 Under the operation of this rule, occasional instances of
 hardship [] may occur, but a different one would much more
 certainly result in mischievous consequences, and the
 general sacrifice of property sold by order of the courts.
 Hence it is, that a purchaser who is no party to the
 proceeding, is not bound to look beyond the decree
 [allowing for the property to be sold], if the facts necessary
 to give the court jurisdiction appear on the face of the
 proceedings. If the jurisdiction has been improvidently
 exercised, it is not to be corrected at his expense, who had
 a right to rely upon the order of the court as an authority
 emanating from a competent source—so much being due to
 the sanctity of judicial proceedings.

Sutton v. Schonwald, 86 N.C. at 202-04; see also Bolton v. Harrison, 250 N.C. 290,

298, 108 S.E.2d 666, 671 (1959) (“Necessarily, purchasers of property, especially land,

must have faith in and place reliance on the validity of judicial proceedings.”);

Crockett v. Bray, 151 N.C. 615, 617, 66 S.E. 666, 667 (1910)2; Lawrence v. Hardy, 151

 2 Our Supreme Court in Crockett recognized the General Assembly’s purpose in enacting
statutes like N.C. Gen. Stat. § 1-108 as follows: “The evident trend of enlightened legislation is to
remove, before sale, all defects of title to property sold under judicial process. Its object is to have
property sold under process of the courts, bring the highest price, and, as far as possible, to eliminate
speculation in defective titles to property sold by its process. The courts have been liberal in construing
this remedial legislation.” Crockett, 151 N.C. at 617, 66 S.E. at 667.

 - 13 -
 IN RE: ACKAH

 Opinion of the Court

N.C. 123, 129, 65 S.E. 766, 769 (1909)3; Herbin v. Wagoner, 118 N.C. 656, 661, 24 S.E.

490, 491 (1896).

 In the present case, the Clerk entered an order detailing the validity of the lien

on Ms. Ackah’s property and stating that service was accomplished on Ms. Ackah “as

provided by law.” There was nothing in the order which would have alerted the Jones

Family of any irregularities in the proceeding. They made their bid in good faith.

And the application of N.C. Gen. Stat. § 1-108 is not unconstitutional as applied to

Ms. Ackah in this case, as Ms. Ackah was afforded constitutionally sufficient notice.

Therefore, although Ms. Ackah is entitled to relief from the Clerk’s order based on

the HOA’s failure to use “due diligence” to notify her of the proceeding under Rule 4,

N.C. Gen. Stat. § 1-108 limits the type of relief available to her in order to protect the

interests of a good-faith purchaser of the Property; here, the Jones Family.

 Even assuming that we are bound by our Court’s 1990 decision in Stallings,

reversal of the superior court’s order affecting the Jones Family’s interest in the

Property is still warranted. Specifically, the superior court based its order on its

determination that the interests of justice required that the sale be set aside

primarily “due to the Property being sold at a substantially low price[.]” However,

 3 Our Supreme Court in Lawrence reiterated the law: “Our law is properly solicitous of the
rights of such a purchaser; and, while they are affected by the existence of certain defects apparent in
the record, numerous and well-considered decisions with us sustain the position that only those defects
which are jurisdictional in their nature are available as against his title.” Lawrence, 151 N.C. at 129,
65 S.E. at 769.

 - 14 -
 IN RE: ACKAH

 Opinion of the Court

this determination is not supported by the superior court’s own findings or the

evidence. Specifically, the court based this conclusion on its finding that “[t]he

purchase price [at the judicial sale] of $2,708.52 was significantly low, given Ackah’s

purchase price of $123,000 in 2005.” The superior court ignored the fact that the

Jones Family bought the Property subject to Ms. Ackah’s first mortgage, which the

court found was in the amount of $117,587.00 when it originated. And there is

otherwise no finding regarding the actual value of the Property or the amount owed

on the first mortgage at the time of the judicial sale. Therefore, the findings simply

do not support the court’s determination that the price paid by the Jones Family was

“substantially low.”

 III. Conclusion

 The superior court properly determined that Ms. Ackah was entitled to some

form of relief pursuant to Rule 60, as she did not receive notice which satisfied Rule

4 of the proceeding before the Clerk. However, because Ms. Ackah received

constitutionally sufficient notice, the relief available to her was limited by N.C. Gen.

Stat. § 1-108, which favors the rights of the Jones Family in the Property over that of

Ms. Ackah. Therefore, we affirm in part, reverse in part and remand the superior

court’s 30 December 2015 order; and we reverse the 30 December 2015 order entered

by the assistant clerk returning possession of the Property to Ms. Ackah. On remand,

the superior court may enter an order not inconsistent with this opinion, which may

 - 15 -
 IN RE: ACKAH

 Opinion of the Court

include, for example, relief for Ms. Ackah in the form of restitution from the HOA, as

authorized by N.C. Gen. Stat. § 1-108.

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

 Judge STROUD concurs.

 Judge MURPHY dissents by separate opinion.

 - 16 -
 No. COA16-829 – In re: Ackah

 MURPHY, Judge, dissenting.

 I agree with the Majority in so far as it holds that the HOA failed to provide

Ackah with sufficient notice under Rule 4 of the North Carolina Rules of Civil

Procedure of its intent to enforce its statutory lien against the Property. However, I

disagree with the Majority’s holding that N.C.G.S. § 1-108 (2015) barred the trial

court from granting Ackah any relief that affected Jones Family’s title in the

Property, and therefore I respectfully dissent.

 Jones Family maintains that the trial court lacked jurisdiction to enter its 30

December 2015 Order setting aside the foreclosure sale and putting Ackah back in

possession of the Property, even if the HOA failed to comply with all procedural

timelines and notices. Specifically, Jones Family contends there is a statutory

prohibition against disrupting a good faith purchaser’s title to property. I disagree.

 Jones Family’s contention is incorrect. In foreclosure proceedings, we have

interpreted the final portion of section 1-108 of the North Carolina General Statutes

not as an absolute bar to the disruption of a transfer of title pursuant to a final

judgment, but rather to mean that, when a judgment to set aside an order for sale is

entered pursuant to Rule 60 of the North Carolina Rules of Civil Procedure, the

judgment does not automatically affect title to the property at issue. Town of Cary v.

Stallings, 97 N.C. App. 484, 487, 389 S.E.2d 143, 145 (1990). Instead, “title to such

property may in fact be affected if the court deems it necessary in the interest of

justice.” Id. at 487, 389 S.E.2d at 145.
 IN RE: ACKAH

 MURPHY, J., dissenting

 By way of example, in Stallings the defendant failed to pay the cost of

improvements made in front of her property by the Town of Cary. Id. at 485, 389

S.E.2d at 144. Consequently, the Town of Cary foreclosed on its assessment lien

against her property and eventually the property was sold to a good faith purchaser.

Id. at 485-86, 389 S.E.2d at 144. As here, the defendant then filed motion to set aside

the judgment pursuant to Rule 60, which the trial court ultimately granted. Id. at

486, 389 S.E.2d at 144. On appeal, the good faith purchaser similarly argued that

the trial court’s order to set aside the final judgment should not have affected its

purchase of the property. Id. at 486, 389 S.E.2d at 144-45. We upheld the trial court’s

determination that the defendant did not receive proper service of process and, for

that reason, affirmed the trial court’s resulting decision to set aside the order for sale,

declare the Commissioner’s Deed null and void, and put the defendant back in

possession of the property. Id. at 487, 389 S.E.2d at 145. Therefore, pursuant to this

Court’s decision in Stallings and our Supreme Court’s holding in In re Civil Penalty,

324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), we must likewise recognize that “title

to . . . property may in fact be affected if the court deems it necessary in the interest

of justice[,]” Stallings, 97 N.C. App. at 487, 389 S.E.2d 145.

 In reaching its conclusion, the Majority holds that we are not bound by

Stallings and instead cites to precedent from our Supreme Court as the basis for its

opinion. While I recognize that, “where there is a conflict between an opinion from

 2
 IN RE: ACKAH

 MURPHY, J., dissenting

this Court and one from our Supreme Court, we are bound to follow the Supreme

Court’s opinion,” that rule is inapplicable to the instant case because the line of

Supreme Court cases to which the Majority cites deals with predecessors to N.C.G.S.

§ 1-108 and are therefore not directly on point. State v. Mostafavi, ___ N.C. App. ___,

___, ___ S.E.2d ___, ___ (June 6, 2017) (No. 16-1233) (citations omitted). Furthermore,

implicit in the binding effect of our holding in Stallings is the logic that, in deciding

that case, we considered the decisions that came before it and rejected the application

of the Majority’s line of cases to N.C.G.S. § 1-108.

 In sum, more than a quarter of a century ago, we rejected Jones Family’s

interpretation of N.C.G.S. § 1-108 in Stallings and the Supreme Court has not seen

fit to disturb our holding. The trial court’s order in the instant case is consistent with

our precedent. I see no reason to conclude, as Jones Family suggests, that the trial

court acted without jurisdiction in divesting it of the Property and I respectfully

dissent from the Majority’s holding embracing Jones Family’s argument over binding

caselaw.

 3